Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
Paul Karl Lukacs (Admitted *pro hac vice*)
pkl@hattislaw.com
**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Telephone: 425.233.8650
Facsimile: 425.412.7171

*Attorneys for Plaintiff Maribell Aguilar
and the Proposed Class*

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIBELL AGUILAR,<br>for Herself, as a Private Attorney General, and/or On Behalf Of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>v.<br><br>CARTER'S, INC; and<br>THE WILLIAM CARTER COMPANY,<br><br>               Defendants. | No.  1:19-cv-03178-SMJ<br><br>**FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE CONSUMER PROTECTION ACT, RCW 19.86, AND FOR INJUNCTIVE RELIEF UNDER THE COMMERCIAL ELECTRONIC MAIL ACT, RCW 19.19**<br><br>**JURY TRIAL DEMANDED** |

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

Plaintiff MARIBELL AGUILAR, demanding trial by jury as to all issues so triable, alleges as follows, on personal knowledge and investigation of her counsel, against Defendants Carter's, Inc., and The William Carter Company (collectively, "Carter's" or "Defendants"):

## I. **INTRODUCTION**

1. Carter's is a leading retailer and manufacturer of baby and young children's clothing. As alleged herein, Carter's has violated and continues to violate the Washington Consumer Protection Act, RCW 19.86, and/or the Washington Commercial Electronic Mail Act, RCW 19.190, by transmitting to Washington consumers emails which contain false or misleading information in the subject lines.

## II. **PARTIES**

2. Plaintiff Maribell Aguilar is a citizen of the United States of America and a citizen, resident and domiciliary of the State of Washington. Ms. Aguilar is an individual and a natural adult person who currently resides and who at all relevant times in the past resided in the City of Toppenish, Yakima County, Washington State.

3. Defendant Carter's, Inc., is a corporation chartered under the laws of the State of Delaware which currently has and at all relevant times in the past has had its headquarters, executive office, principal place of business, and/or nerve center in Atlanta, Georgia. Carter's, Inc., has at least eight U.S. subsidiaries.

4. Defendant The William Carter Company is a corporate subsidiary of Carter's, Inc., and is chartered under the laws of the state of Massachusetts which currently has and at all relevant times in the past has had its headquarters, executive office, principal place of business and/or nerve center in Atlanta, Georgia.

5. The words "Defendants" or "Carter's" as used throughout this pleading refers to Defendant Carter's, Inc., and/or Defendant The William Carter Company unless context dictates otherwise.

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 2
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## III. JURISDICTION AND VENUE

6. **Subject Matter Jurisdiction.** The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1)—i.e., traditional diversity jurisdiction—because the amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and the matter is between citizens of different states.

7. The Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)—i.e., Class Action Fairness Act jurisdiction—because the amount in controversy exceeds the sum or value of $5 million (exclusive of interest and costs) and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant.

8. **Personal Jurisdiction.** This Court may exercise personal jurisdiction over each of the defendants pursuant to Washington State's long-arm statute, RCW 4.28.185. This Court may exercise personal jurisdiction over out-of-state Defendants because the claims alleged in this civil action arose from, without limitation, the transaction by Defendants of any business within the State of Washington (and/or within the Eastern District of Washington), and/or the commission by Defendants of a tortious act within the State of Washington (and/or within the Eastern District of Washington).

9. This Court may exercise personal jurisdiction over out-of-state Defendants to the fullest extent allowed under the federal due process clause. Defendants have certain minimum contacts with the State of Washington (and/or with the Eastern District of Washington) such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice. As alleged in this pleading, Defendants have and continue to purposefully do some act or consummate some transaction in the State of Washington (and/or in the Eastern District of Washington), Plaintiff's claims arise from and/or are connected with said act or

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 2
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

transaction of Defendants, and the assumption of jurisdiction by this Court does not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the State of Washington (and/or in the Eastern District of Washington), the relative convenience of the parties, the benefits and protection of laws of the State of Washington afforded the respective parties, and the basic equities of the situation.

10. Carter's owns and operates about eighteen Carter's-branded retail stores in the State of Washington, including stores in Richland, Spokane, and Union Gap. Carter's operates a website, www.carters.com, by which Carter's advertises and sells its goods, with said website being regularly seen by Washington and Eastern District consumers and being regularly used by Washington and Eastern District consumers to purchase goods from Carter's. Carter's regularly transmits commercial emails, which Plaintiff alleges contain false or misleading information in the subject lines, to thousands of residents in the State of Washington.

11. **Venue.** Venue is proper in the Eastern District of Washington under 28 U.S.C. § 1391(b) because, without limitation, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Eastern District of Washington.

12. **Intra-District Assignment.** Plaintiff Aguilar resides in Yakima County, which is within the Yakima Division of the Eastern District of Washington.

## IV. <u>FACTUAL ALLEGATIONS</u>

13. Carter's is the leading retailer and manufacturer of baby and young children's clothing in the United States with over $3 billion in annual U.S. sales. Carter's sells its apparel under the CARTER'S trademark, among other marks. According to the NPD Group, Inc., Carter's has more than three times the market

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 3
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1    share of its nearest competitor. In the baby apparel segment in particular, Carter's has

2    nearly five times the market share of its nearest competitor.

3           14.     Almost every product sold by Carter's is manufactured by Carter's in the

4    sense that Carter's designs the product and determines how many units will be

5    manufactured, on what schedule, and according to what specifications. While

6    Carter's may sub-contract the physical construction of its products to third parties,

7    Carter's is the manufacturer of almost all of its products in the sense that Carter's

8    decides what products to make, when, where, how, and in what quantities, materials,

9    sizes and colors. When this pleading refers to Carter's as a manufacturer, it does so in

10   this sense of overall control over the creation of its products.

11          15.     Approximately 36% of Carter's U.S. sales are made directly to

12   consumers in Carter's company-owned retail stores. Carter's has approximately 734

13   Carter's-branded retail stores in the U.S., including 18 in the State of Washington.

14          16.     Approximately 24% of Carter's U.S. sales are made directly to

15   consumers on the Carter's website at www.carters.com. A significant number of these

16   customers purchase online and then pickup in-store.

17          17.     Approximately 40% of Carter's revenues consist of wholesale channel

18   sales to third-party retailers. Carter's manufactures and then sells its products at

19   wholesale to other retailers or resellers. Some of the products Carter's sells to third-

20   party retailers are branded under the "Carter's" label, including products sold at retail

21   by Macy's, Kohl's, and J.C. Penney. Carter's also manufactures many products

22   exclusively for certain retailers, labeled under retailer house brands. For example,

23   Carter's manufactures the "just one you" brand of products exclusively for Target.

24   Carter's manufactures the "child of mine" brand of products exclusively for Walmart.

25   Carter's manufactures the "simple joys" brand of products exclusively for Amazon.

26

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

18.     Many products manufactured by Carter's are *only* available at Carter's company-owned retail stores or on the Carter's website, and are not available from other retailers or resellers.

**A.     Background Information: Carter's "Sales" Are False.**

19.     Carter's creates list prices for all of its products which Carter's artificially inflates far above the products' regular and true selling prices. Carter's perpetually advertises nearly all of its products in its retail stores and on its website as being discounted from Carter's self-created list prices (typically 40% to 70% off). Carter's advertised discounts and list prices are false because Carter's products are perpetually discounted and, therefore, are never or almost never offered at their stated list prices.

20.     Plaintiff's allegations concerning Carter's false discounts are based on a comprehensive investigation by Plaintiff's counsel of Carter's pricing practices for a period of over five years. Plaintiff's counsel has been monitoring and scraping Carter's website on an automated daily basis with a proprietary software program since October 15, 2015. Plaintiff's counsel has compiled and extracted daily pricing and marketing data from the website for nearly all of the products Carter's has offered during this time. In total, Plaintiff's counsel has assembled and analyzed a comprehensive historical database of daily prices and time-stamped screenshots of over 9.6 million daily offerings for over 100,000 products over this more than five-year period.

21.     Plaintiff's counsel's exhaustive big-data analysis of millions of data points for these more than 100,000 products over this more than five-year period shows that Carter's advertises perpetual discounts for nearly all of its products. The percentage-off and other discounts are *always* false, and Carter's list prices (i.e., reference prices) from which the discounts are calculated are false and inflated.

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 5
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

22.     Plaintiff's counsel has also investigated Carter's brick-and-mortar retail stores and has found that Carter's false discount practices and product pricing are substantially the same both online and in-store. Virtually all products that Carter's offers in its brick-and-mortar retail stores are also available and advertised on the Carter's website at the same list prices and at substantially the same sale prices. If anything, Carter's false discount practices appear to be more egregious in its retail stores, with the vast majority of the products *never* being offered at list price for a single day.

23.     Based on the investigation of Plaintiff's counsel, Carter's false discount practices on its website and in its brick-and-mortar stores have been consistent and ongoing from at least 2015 to the present.

**B.      Carter's Transmits Commercial Emails Containing False Or Misleading Information In The Subject Line.**

24.     Carter's routinely transmits mass commercial emails to Plaintiff and thousands of other Washington consumers as part of Carter's regular marketing campaigns. (As used in this Complaint, allegations that Carter's "transmitted" an email are allegations that Carter's initiated the transmission of the email, conspired with another to initiate the transmission of the email, and/or assisted the transmission of the email. *See* RCW 19.190.030(1).)

25.     Many of Carter's commercial emails have subject lines containing false or misleading information. Specifically, the emails have subject lines stating that Carter's is offering discounts at a specified percentage off—for example, "xx% Off Everything," "xx% Off Entire Site and Store," "Save xx% Off," or "xx% Off [specified products]."

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

26.     For example, below is an image of an email Carter's transmitted to Plaintiff on October 12, 2019, with the false or misleading subject line: "50% off entire site + store at Union Gap, WA!"



27.     The "xx% Off" statements in the email subject lines are false or misleading for several reasons:

28.     **First**, an ordinary consumer would read and understand the "xx% Off" statements to mean a discount from Carter's regular prices for its products. However, the discounts were actually reductions from Carter's Manufacturer's Suggested Retail Price ("MSRP")—which do not reflect the regular prices at which Carter's offers its products—and nothing in the subject lines (such as an asterisk[1]) communicate to the

---

[1] After this case was filed (and apparently in direct response to this case), starting in late December 2019 Carter's begin inserting an asterisk in some email subject lines next to the "xx% Off" statement where the email subject line advertised "entire site" or "everything" sales.

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 7
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

reader that the advertised discounts were reductions from something other than Carter's regular prices.

29. As detailed above, Carter's never or almost never offers its products in its retail stores or on its website at the self-created MSRP. On the rare occasion when Carter's does offer an item at MSRP, the item is offered in bad faith as a liability shield to artificially "establish" a price from which discounts are created and advertised. Carter's primary intent is to artificially establish the MSRP for the purpose of exculpating itself from legal liability for its pricing fraud, while at the same time ensuring that in fact virtually no products are actually purchased at MSRP by customers.

30. The indicia of bad faith on the part of Carter's include, without limitation, that: (1) Carter's only, if ever, offers an item at MSRP on its website (and *only* on its website) for at most a couple of weeks during an initial online introductory period; (2) Carter's has a policy to never or virtually never offer an item at MSRP in its retail stores (where approximately 60% of Carter's direct sales currently occur, and where historically and pre-COVID, 80%+ of Carter's direct sales occurred); (3) if and when Carter's offers an item at MSRP (only) on its website during such an initial introductory period, Carter's intentionally hides and buries the product on its website during this time, purposefully making it very difficult for the ordinary website user to find any such products being offered or sold at MSRP; (4) Carter's intentionally engages in these practices in order to ensure its customers purchase few if any of its products at MSRP; and/or (5) as a result, customers in fact purchase few if any products from Carter's at MSRP.

31. **Second**, the "xx% Off" statements are false or misleading because, even if an ordinary consumer understood the "xx% Off" statements to mean a discount from the MSRP, he or she would assume that Carter's, as the manufacturer, set the

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

MSRP for its products at the actual market price—or at least endeavored to do so in good faith. However, Carter's does not do this. Instead, Carter's intentionally sets the MSRP at an inflated dollar amount which Carter's knows with certainty is grossly above the true market price for the product. Meanwhile, Carter's policy, as the manufacturer, is to give each product a price tag with this self-created, inflated MSRP which is the same regardless of whether the product is offered direct by Carter's in its stores or on its website, or offered by some of its resellers.

32.     As explained above, Carter's never or almost never offers its products at MSRP. Additionally, the MSRP Carter's gives to each of its products does not reflect the regular or normal price that resellers—e.g., third-party retailers such as Macy's, Kohl's, and J.C. Penney—offer or sell certain of the products at. Phrased differently, Carter's cannot claim that its self-created MSRP is a market price, even for those particular products which are also available at third-party retailers.

33.     Based on the investigation of Plaintiff's counsel, none of the major retailers in the children's apparel market regularly offers or sells Carter's-labeled products at Carter's self-created MSRP. (The conduct of the Carter's resellers is logical; if the resellers offered or sold in good faith the Carter's products at the MSRP, then the resellers would be perpetually undercut and would lose sales to Carter's, whose own 734 retail stores and website have a policy and practice of consistently offering the products for greater than 35% below MSRP.)

34.     Below is an example which demonstrates how Carter's products are typically offered in the consumer marketplace, by both Carter's itself, and by Carter's resellers, at a similar (and significant) discount to the inflated and fictional MSRP provided by Carter's. The screenshots below were taken on April 22, 2019, of the identical Carter's-branded Floral Jumpsuit/Coverall ("Jumpsuit") available direct

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 9
19-CV-03178-SMJ

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

from Carter's (see the first screenshot), and also from Carter's resellers Kohl's (see the second screenshot) and Macy's (see the third screenshot):





FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 10
19-CV-03178-SMJ

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com



35.     The MSRP or reference price was $20.00 at all three retailers, which reflects Carter's policy, as the manufacturer, to give each product a price tag with an MSRP which is the same regardless of whether the product is offered direct by Carter's in its stores or website, or by its resellers who offer non-exclusive Carters-branded products.

36.     All three retailers offered the Jumpsuit for between $8.00 and $9.99 on this day, at a supposed "discount" of at least 50% from the MSRP or reference price. Based on the investigation of Plaintiff's counsel, all three retailers used and continue to use the Carter's-provided MSRP as the advertised reference price for virtually all Carter's-branded products, and all three retailers consistently offer Carter's-branded products at a perpetual "discount" of between 40% to 70% from Carter's inflated and fictional MSRP.

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 11
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

37. Carter's is fully aware, expects, and/or intends that its resellers virtually never offer Carter's products at MSRP and that its resellers instead perpetually offer Carter's products at a "discount" of 40% to 70% from the inflated and fictional MSRP.

38. In sum, neither Plaintiff nor an ordinary Washington consumer would understand the "xx% Off" statements in the email subject lines to refer to a discount from a self-created MSRP which Carter's created in bad faith and which neither Carter's nor its resellers treat as a real, bona fide price.

39. As part of its investigation, Plaintiff's counsel has monitored Carter's mass email marketing campaign by collecting hundreds of mass commercial emails that Carter's has sent to its Washington customers over the years—many of which advertise false "xx% Off" discounts in the subject line.

40. In this year alone (year 2020), Carter's has transmitted at least forty (40) emails which had subject lines advertising false "xx% Off" discounts to Plaintiff and thousands of other Washington consumers. See the table below:

| No. | Date | Email Subject Line |
| --- | --- | --- |
| 1 | 11/23/2020 | 🌟 50-60% off 4-piece jammies! 🌙 |
| 2 | 11/20/2020 | 🌟 EARLY BLACK FRIDAY = 50-60% OFF 🌟 |
| 3 | 11/18/2020 | 👶 50% OFF 👶 because... BLACK FRIDAY! |
| 4 | 11/16/2020 | EARLY BLACK FRIDAY DEAL: 50% off SOCKS + UNDIES! |
| 5 | 10/21/2020 | It's bedtime! (and jammies are 50% off!) |
| 6 | 10/20/2020 | Bodysuits for fall + holidays! (And 50% off!) |
| 7 | 10/20/2020 | Pssst...you're getting 50% off to celebrate the holidays |
| 8 | 10/08/2020 | Layer up, baby! 🍁 50% off sets! |
| 9 | 09/08/2020 | BABY LOVE EVENT 💙 55% off! |
| 10 | 08/23/2020 | 10% off EVERYTHING ends tonight! |

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

| 11 | 08/14/2020 | Short sets + more sets for baby... 60% off! |
| 12 | 07/27/2020 | Shop 60% off swim NOW! |
| 13 | 07/27/2020 | TODAY ONLY! 60% off swim! |
| 14 | 06/27/2020 | Swim this way... to 50% off! |
| 15 | 06/21/2020 | 50% off sun smart swimsuits, trunks, and rashguards! |
| 16 | 05/30/2020 | 50% off... so many SHORTS! |
| 17 | 04/25/2020 | Stock up on swimwear... save 60%! |
| 18 | 04/20/2020 | Splash into 50% off swimsuits, trunks + more! |
| 19 | 04/10/2020 | Swimsuits?! They're 50% off! ☀️ |
| 20 | 03/30/2020 | 24 HOUR FLASH SALE! 70% off! |
| 21 | 03/27/2020 | 50% off comfy jammies they can stay in ALL DAY! |
| 22 | 03/16/2020 | ENDS TODAY! 60% off jammies! |
| 23 | 03/11/2020 | Dive in... for 50% off swim! 🏞️ |
| 24 | 02/25/2020 | YAY! 50-60% off jammies! |
| 25 | 02/24/2020 | 50-60% off SPRING JAMMIES! 🧩 |
| 26 | 02/23/2020 | Need sandals? Sneakers? Cleats? Get 50% off! |
| 27 | 02/22/2020 | Two days only! 60% off in store + online! |
| 28 | 02/21/2020 | 50% off jammies is totally a-PEEL-ing! |
| 29 | 02/20/2020 | 50% off MUST-HAVE jammies + 3X POINTS! |
| 30 | 02/19/2020 | YAY! 50% off America's favorite jammies! |
| 31 | 02/01/2020 | 60-70% off tops, bottoms, sets + more! |
| 32 | 01/28/2020 | 50% off the perfect pjs! ✨ 🌙 |
| 33 | 01/27/2020 | 50% off America's favorite jammies! And free shipping too! |
| 34 | 01/26/2020 | Whale, whale, whale... 40% off little baby basics! 🐳 |
| 35 | 01/13/2020 | Eeekk! Final hours for 60% off jammies! |
| 36 | 01/13/2020 | Don't miss 60% off JAMMIES! |
| 37 | 01/12/2020 | Hi! 60% off JAMMIES is just inside! |

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

| 38 | 01/12/2020 | 60% off JAMMIES! Annnnd FREE shipping, too! |
| 39 | 01/11/2020 | 60% off baby gear ends TONIGHT! |
| 40 | 01/03/2020 | 50% off sherpa fleece + more! |

41.     Going back further, from November 2018 to December 2019, Carter's transmitted at least another one hundred and ten (110) commercial emails containing false or misleading information in the subject line to thousands of Washington consumers, including Plaintiff:

| No. | Date | Email Subject Line |
|-----|------|--------------------|
| 41 | 12/17/2019 | Still gift shopping?! Here's 50-70% off! 🎁 |
| 42 | 12/16/2019 | 🎉 50-70% off! 🎉 |
| 43 | 12/16/2019 | HAPPY MONDAY! And happy 50-70% off! |
| 44 | 12/15/2019 | Santa's packing up the sleigh… with 50-70% off! 🎅 |
| 45 | 11/29/2019 | BLACK FRIDAY 60% OFF countdown is ON! |
| 46 | 11/27/2019 | 60% OFF NO EXCLUSIONS + $5 JAMMIES ARE BACK! |
| 47 | 11/26/2019 | BLACK FRIDAY 50-60% off + $4 and up DOORBUSTERS! |
| 48 | 11/22/2019 | Black Friday 50% OFF savings on NEW arrivals! |
| 49 | 11/16/2019 | LAST CHANCE! 🎄 60% OFF! |
| 50 | 11/11/2019 | Ends today! 60% off jammies + free shipping! |
| 51 | 11/07/2019 | Santa photos coming up?! Snag 50% off! |
| 52 | 11/05/2019 | 50% off Christmas morning jammies! 🎄 |
| 53 | 10/26/2019 | 60-70% off is almost gone… ⌛ |
| 54 | 10/21/2019 | 4-in-1 jackets are 55% off! |
| 55 | 10/15/2019 | 50-60% off entire site ends TONIGHT! ⌛ |
| 56 | 10/14/2019 | 50% off ends TODAY! 🍂 |
| 57 | 10/12/2019 | 50% off entire site + store! |

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

| 58 | 10/10/2019 | 50% off! Stock up for fall! |
|---|---|---|
| 59 | 10/09/2019 | 🍂 50% off entire site + store! 🍂 |
| 60 | 09/30/2019 | ALERT: 50% off or more ends today! |
| 61 | 09/29/2019 | 50% off OR MORE continues… but not for long! |
| 62 | 09/27/2019 | 50% off OR MORE! Now that's a good deal! |
| 63 | 09/27/2019 | 50% off or more! AND an extra 30%?! |
| 64 | 09/26/2019 | Better hurry! 70% off ends tonight! |
| 65 | 09/26/2019 | 50-60% off outerwear! Ends TODAY! 🧡 |
| 66 | 09/26/2019 | Oh no! 70% off ENDS TODAY! |
| 67 | 09/24/2019 | Oh. YEAH! 70% off FLASH SALE! |
| 68 | 09/24/2019 | FLASH SALE! 70% OFF! ⚡ |
| 69 | 09/23/2019 | 55% off or more entire site is waiting for you! |
| 70 | 09/22/2019 | 55% off or more entire site! 🌟 |
| 71 | 09/10/2019 | Final hours… 60% off all jammies ends tonight! |
| 72 | 09/10/2019 | 60% off ends today! |
| 73 | 09/08/2019 | All jammies are 60% off now! |
| 74 | 09/07/2019 | 60% off ALL JAMMIES! 🌙 |
| 75 | 09/03/2019 | Final hours for 50% off! |
| 76 | 09/02/2019 | LAST DAY! 50-70% off almost EVERYTHING! |
| 77 | 09/01/2019 | 50-70% off almost EVERYTHING! |
| 78 | 08/31/2019 | Oh YEAH! 50-70% off entire site + store! |
| 79 | 08/28/2019 | Shoes? They're 50% off! |
| 80 | 08/28/2019 | Hi! 50% off is waiting for you! 🎉 |
| 81 | 08/27/2019 | FINAL HOURS! 🕐 50-60% off all jammies ends tonight! |
| 82 | 08/27/2019 | Ends today! 50-60% off all jammies! |
| 83 | 08/26/2019 | 50-60% off ALL jammies and free shipping, too! |
| 84 | 08/25/2019 | Time for 50% off entire site + store! |

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

| 85 | 08/23/2019 | Save 50% off entire site + store (plus an extra coupon, too!) |
|----|------------|--------------------------------------------------------------|
| 86 | 08/22/2019 | WOWZA! 50% off America's favorite jammies! |
| 87 | 08/22/2019 | Oh yeah! 50% off jammies! |
| 88 | 08/20/2019 | Oh, yeah! 50% off for you! |
| 89 | 08/04/2019 | 50% off entire site + store (JUST UNTIL TOMORROW) |
| 90 | 08/03/2019 | SUPER STOCK UP! 50% off entire site + store! |
| 91 | 08/02/2019 | 50% off... extra 20% off... Free shipping... |
| 92 | 08/02/2019 | OH YEAH! 50% off entire site + store! |
| 93 | 07/26/2019 | 50% off jammies! Now that's magical! 🦄 |
| 94 | 07/22/2019 | Hurry and save 60% off! |
| 95 | 07/21/2019 | 60% off America's favorite jammies ends tomorrow! |
| 96 | 07/19/2019 | Pop into color with 50% off! |
| 97 | 07/16/2019 | Ends TONIGHT! 55% off entire site + free shipping. |
| 98 | 07/15/2019 | 55% off entire site, free shipping + more! |
| 99 | 06/11/2019 | ☀️ 60% off ☀️ Tees, shorts, sets and more! |
| 100 | 05/30/2019 | Buy 1 get 2 free AND 60% off swim?! |
| 101 | 05/28/2019 | 60% off bodysuits and sets! |
| 102 | 05/27/2019 | Hurry, hurry! 50-60% off entire site + store ends today! |
| 103 | 05/25/2019 | Whoa! 50-60% off entire site + store! |
| 104 | 05/25/2019 | 50-60% off entire site and store! |
| 105 | 05/22/2019 | Whoa! NOW 50-60% off entire site + store! |
| 106 | 05/20/2019 | ENDS TODAY! 50-60% off all jammies. |
| 107 | 05/17/2019 | JUST IN! Little baby basics 50% off! |
| 108 | 05/12/2019 | YESSS! 50% OFF SWIM, SETS + PJS! |
| 109 | 05/11/2019 | 50% OFF swim + sets + pjs |
| 110 | 05/10/2019 | YESSS! 50% OFF SWIM, SETS + PJS! |
| 111 | 05/09/2019 | Cannonball! Shop all things swim at 50% off! |

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

| 112 | 05/08/2019 | LAST CHANCE FOR SHOES! 60% off sale ends today! |
| 113 | 05/07/2019 | Hurry before it's too late! 50% off FLASH SALE! |
| 114 | 05/07/2019 | FLASH SALE! 50% off |
| 115 | 05/03/2019 | 50% OFF 2-piece sets! ❤️ |
| 116 | 04/21/2019 | 50-70% off everything! |
| 117 | 04/19/2019 | FINAL WEEKEND! 50-70% off everything! |
| 118 | 04/19/2019 | 50-70% off e-v-e-r-y-t-h-i-n-g 🌷 |
| 119 | 04/18/2019 | 50-70% off E-V-E-R-Y-T-H-I-N-G! |
| 120 | 04/02/2019 | Final hours…50-60% off entire site |
| 121 | 04/02/2019 | Final hours…50-60% off entire site ends today! |
| 122 | 03/22/2019 | 50% off EVERYTHING! 😎 |
| 123 | 03/20/2019 | 50% off swimsuits (+ EVERYTHING else!) |
| 124 | 03/19/2019 | 😎 50% off E.V.E.R.Y.T.H.I.N.G! |
| 125 | 03/18/2019 | 60% off jammies + free shipping (ends today!) |
| 126 | 03/17/2019 | 60% off jammies + free shipping |
| 127 | 03/10/2019 | Rompers + sunsuits — 50% off ends today! |
| 128 | 03/09/2019 | 50% off rompers + sunsuits — this weekend only! |
| 129 | 03/08/2019 | 50% off rompers + sunsuits! |
| 130 | 02/18/2019 | ENDS TODAY: 50-70% off EVERYTHING |
| 131 | 02/17/2019 | 50-70% off EVERYTHING (+ more!) ends tomorrow! |
| 132 | 02/16/2019 | 50-70% OFF ENTIRE SITE & STORE |
| 133 | 02/12/2019 | 50% off shoes! |
| 134 | 01/29/2019 | 50% off jammies + FREE SHIPPING |
| 135 | 01/28/2019 | 50% off. Plus, free shipping! |
| 136 | 01/14/2019 | Don't miss 60% off jammies + FREE shipping! |
| 137 | 01/13/2019 | 60% off jammies + FREE SHIPPING |
| 138 | 12/24/2018 | Ends tonight! 50-70% off. NO EXCLUSIONS! |

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 17
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

| 139 | 12/24/2018 | Last day! 50-70% off ENTIRE STORE (Eh… Santa's workshop.) |
| 140 | 12/23/2018 | ENDS TOMORROW! 50-70% off. NO EXCLUSIONS! |
| 141 | 12/22/2018 | 50-70% off + Extra 20% off Coupon! |
| 142 | 12/22/2018 | 50-70% OFF Entire Site + Store: NO EXCLUSIONS. |
| 143 | 12/21/2018 | NO EXCLUSIONS! 50-70% off Everything! |
| 144 | 12/17/2018 | 50% off multi-pack bodysuits |
| 145 | 12/01/2018 | Last day for 70% off + buy 1 get 2 FREE! |
| 146 | 11/27/2018 | ZERO exclusions!!! 60% off EVERYTHING ❤️ |
| 147 | 11/26/2018 | NO EXCLUSIONS!!! 60% off EVERYTHING! |
| 148 | 11/24/2018 | 60% off EVERYTHING 🎁ZERO EXCLUSIONS! |
| 149 | 11/23/2018 | Yay! 60% off E.V.E.R.Y.T.H.I.N.G! |
| 150 | 11/21/2018 | NO EXCLUSIONS! 🎁60% OFF EVERYTHING! |

42.    Going back even further, prior to November 2018 and within the applicable limitations period, based on information and belief Carter's transmitted hundreds more commercial emails containing false or misleading information in the subject line to Washington consumers.

43.    The false or misleading nature of Carter's misconduct is non-obvious and/or obscured from public view, and neither Plaintiff nor the members of the putative class could have, through the use of reasonable diligence, learned of the accrual of her and their claims against Carter's at an earlier time. This Court should, at the appropriate time, apply the discovery rule to extend the applicable limitations period (and the corresponding class period) to the date on which Carter's commenced transmitting emails which violated the Washington Consumer Protection Act and/or the Washington Commercial Electronic Communication Act in the manner described herein even if such a date is beyond the statutory limitations period otherwise applied

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1    to such claims.

2        44.    Carter's continues to transmit (and, absent an injunction, will continue to

3    transmit) commercial email messages to Plaintiff and other Washington consumers

4    which contain false or misleading percentage-off statements in the subject line.

5        45.    As of the date of the filing of this pleading, Plaintiff is still receiving

6    Carter's commercial emails. Plaintiff would like to continue to receive Carter's

7    commercial emails, provided that the subject lines of the emails do not contain false

8    or misleading information.

9    **V.    CLASS ACTION ALLEGATIONS**

10       46.    Plaintiff Maribell Aguilar brings this class-action lawsuit on behalf of

11   herself and on behalf of the members of the following class (the "Class"):

12           **All residents of the State of Washington who, within the**
             **applicable limitations period, received one or more emails**
13           **from Carter's that contained a statement of a specific**
             **percentage-off in the subject line.**
14

15       47.    Specifically excluded from the Class are each defendant, any entity in

16   which a defendant has a controlling interest or which has a controlling interest in a

17   defendant, a defendant's agents and employees and attorneys, the bench officers to

18   whom this civil action is assigned, and the members of each bench officer's staff and

19   immediate family.

20       48.    *Numerosity*. Plaintiff does not know the exact number of Class members

21   but is informed and believes that the Class easily comprises 5,000 Washington State

22   residents and could, by the date of entry of Judgment, number in excess of 20,000

23   Washington State residents. As such, Class members are so numerous that joinder of

24   all members is impracticable.

25       49.    ***Commonality and Predominance***. Well-defined, nearly identical legal

26   or factual questions affect the members of the Class. These questions predominate

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

over questions that might affect individual Class members. These common questions include, but are not limited to, the following:

a)     Carter's policies and actions regarding the subject lines of its promotional emails;

b)     Whether the subject lines of Carter's promotional emails sent to Washington State residents contain false or misleading information;

c)     Whether Carter's should be ordered to pay statutory damages; and/or

d)     Whether Carter's should be enjoined from further engaging in the misconduct alleged herein.

50.     *Typicality.* Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a result of Defendants' practices and schemes. By its conduct and omissions alleged herein, Carter's has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and/or declaratory relief is appropriate respecting the Class as a whole.

51.     *Adequacy.* Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests. Plaintiff has retained counsel who have considerable experience and success in prosecuting complex class action and consumer protection cases.

52.     Further, a class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of their claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress for Carter's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 20
19-CV-03178-SMJ

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

## CAUSES OF ACTION

### COUNT I
### Violation of the Washington Commercial Electronic Mail Act
### (RCW Chapter 19.190)

53. Plaintiff realleges and incorporates by reference all paragraphs alleged hereinbefore.

54. Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general seeking the imposition of public injunctive relief, and/or as a putative class representative serving on behalf of all others similarly situated.

55. Plaintiff brings individual claims in this lawsuit that are based on emails Carter's sent to her after August 14, 2019—the date after which Plaintiff's claims are not subject to arbitration. Carter's has transmitted at least eighty-eight (88) unlawful emails to Plaintiff since August 14, 2019, which are listed as the first 88 emails numbered in the tables above.

56. "While Plaintiff may not raise individual claims arising prior to August 14, 2019—and thus prior to the original complaint on June 17, 2019—she may raise class claims from before that time." Order Granting in Part and Denying in Part Plaintiff's Motion to Confirm Arbitration Award (Dkt. 24). Accordingly, Plaintiff brings class claims that extend to all unlawful emails Carter's has transmitted to putative class members within the applicable limitations period. (If the Court does not apply the discovery rule, then the applicable limitations period would be four years prior to the date of the original complaint. *See* RCW § 19.86.120.)

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

57. "CEMA [the Washington Commercial Electronic Mail Act] was enacted to protect concrete interests in being free from deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019 Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded a concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from the defendant containing allegedly false "xx% Off" statements in the subject line).

58. Under CEMA, it is irrelevant whether the commercial e-mails were solicited. *Id.*

59. An injury occurs anytime a commercial e-mail is transmitted that contains false or misleading information in the subject line. *Id.* at 1009.

60. CEMA creates an independent but limited private right of action which can be asserted by a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1).

61. It is Plaintiff's intent in this count to plead an independent CEMA cause of action only to the limited extent that it is recognized by law, e.g., when a plaintiff seeks injunctive relief. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation."); *Gragg v. Orange Cab Co.*, 145 F. Supp. 3d 1046, 1052 (W.D. Wash. 2015).

62. Carter's has initiated the transmission of numerous commercial electronic mail messages with false or misleading subject lines to Plaintiff Aguilar and members of the Class (the "Emails").

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 22
19-CV-03178-SMJ

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1    63.    Carter's transmitted at least eighty-eight (88) of these unlawful emails

2    after August 14, 2019—the date after which any of Plaintiff's individual claims are

3    not subject to arbitration.

4    64.    The Emails were electronic mail messages, in that they were each an

5    electronic message sent to an electronic mail address. The Emails from Carter's also

6    referred to an internet domain, whether or not displayed, to which an electronic mail

7    message can or could be sent or delivered.

8    65.    Carter's sent the Emails for the purpose of promoting goods or services

9    for sale or lease. Carter's was the original sender of the Emails.

10   66.    Plaintiff Aguilar received the Emails at her electronic mail address,

11   which is the destination, commonly expressed as a string of characters, at which she

12   receives and to which electronic mail may be sent or delivered.

13   67.    Carter's initiated the transmission, conspired with another to initiate the

14   transmission, and/or assisted the transmission of the Emails to one or more electronic

15   mail addresses that Carter's knew, or had reason to know, were held by a Washington

16   State resident, i.e., to the email addresses of Ms. Aguilar and members of the Class.

17   68.    At all relevant times, Carter's knew that the intended recipients

18   (Ms. Aguilar and members of the Class) were residents of the State of Washington

19   because, without limitation: (1) Carter's possessed actual knowledge of Ms. Aguilar's

20   and each Class member's state of residence; (2) Carter's possessed constructive

21   knowledge of Ms. Aguilar's and each Class member's state of residence; (3)

22   information was available to Carter's upon request from the registrant of the internet

23   domain name contained in each recipient's electronic mail address; and/or (4)

24   Carter's otherwise knew or should have known or had reason to know that Ms.

25   Aguilar and the members of the Class were residents of the State of Washington. *See*

26   *State v. Heckel*, 122 Wash. App. 60, 69 (2004) (holding as a matter of law that a

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  defendant had a reason to know that he sent emails to Washington residents by

2  sending over 100,000 emails a week to people around the country).

3      69.     In violation of CEMA and for the reasons alleged hereinabove, the

4  subject line of each Email contained false or misleading information. Specifically, the

5  Emails have subject lines stating that Carter's is offering discounts at a specified

6  percentage off—for example, "xx% Off Everything," "xx% Off Entire Site and

7  Store," "Save xx% Off," or "xx% Off [specified products]."

8      70.     The balance of the equities favors the entry of permanent injunctive

9  relief against Carter's. Plaintiff, the members of the Class, and the general public will

10 be irreparably harmed absent the entry of permanent injunctive relief against Carter's.

11     71.     Plaintiff, the members of the Class, and the general public lack an

12 adequate remedy at law. Absent injunctive relief, Carter's will continue to transmit

13 emails with false or misleading subject lines to Plaintiff and the Class members.

14 Money damages can only redress past harms; no amount of money damages can

15 redress this threat of future harm. Only injunctive relief can redress the threat of the

16 future harm that is Carter's transmitting more emails with violative subject lines to

17 Plaintiff and Class members.

18     72.     A permanent injunction against Carter's is in the public interest. Carter's

19 unlawful behavior is ongoing as of the date of the filing of this pleading; absent the

20 entry of a permanent injunction, Carter's unlawful behavior will not cease and, in the

21 unlikely event that it voluntarily ceases, is likely to reoccur.

## COUNT II
### Violation of the Washington Consumer Protection Act
### (RCW Chapter 19.86)

24     73.     Plaintiff realleges and incorporates by reference all paragraphs alleged

25 hereinbefore.

26

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 24
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

74.     Plaintiff pleads this count in three separate capacities: in her individual capacity, as a private attorney general seeking the imposition of public injunctive relief, and/or as a putative class representative serving on behalf of all others similarly situated.

75.     Plaintiff brings individual claims that are based on emails Carter's sent to her after August 14, 2019—the date after which Plaintiff's claims are not subject to arbitration. Carter's has transmitted at least eighty-eight (88) unlawful emails to Plaintiff since August 14, 2019, which are listed as the first 88 emails numbered in the tables above.

76.     "While Plaintiff may not raise individual claims arising prior to August 14, 2019—and thus prior to the original complaint on June 17, 2019—she may raise class claims from before that time." Order Granting in Part and Denying in Part Plaintiff's Motion to Confirm Arbitration Award (Dkt. 24). Accordingly, Plaintiff brings class claims that extend to <u>all</u> unlawful emails Carter's has transmitted to putative class members within the applicable limitations period. (If the Court does not apply the discovery rule, then the applicable limitations period would be four years prior to the date of the original complaint. *See* RCW § 19.86.120.)

77.     The Washington Consumer Protection Act (the "CPA"), RCW 19.86, was first enacted in 1961 and is Washington's principal consumer protection statute. The CPA "replaces the now largely discarded standard of *caveat emptor* with a standard of fair and honest dealing." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction).

78.     The CPA's primary substantive provision declares unfair methods of competition and unfair or deceptive acts or practices to be unlawful. RCW 19.86.020. "Private rights of action may now be maintained for recovery of actual damages, costs, and a reasonable attorney's fee. RCW 19.86.090. A private plaintiff may be

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 25
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

eligible for treble damages . . . . Private consumers may obtain injunctive relief, even if the injunction would not directly affect the individual's own rights. RCW 19.86.090." Washington Pattern Jury Instruction Civil No. 310.00 (Consumer Protection Act—Introduction).

79. The CPA recognizes and incorporates *per se* violations. The Washington Legislature routinely prohibits certain specified conduct but, instead of creating a new and independent private right of action to enforce the prohibition, the Legislature deems the unlawful conduct to be a *per se* violation of the CPA. If a defendant engages in that unlawful conduct, a plaintiff may file a CPA complaint alleging the *per se* violation and seek the remedies available under the CPA and/or also seek the remedies available under the statute which forbids the *per se* violation. *See* Washington Pattern Jury Instruction Civil No. 310.03 (*Per Se* Violation of Consumer Protection Act) and Appendix H (Consumer Protection Act *Per Se* Violations).

80. A violation of CEMA is a *per se* violation of the CPA. *See* RCW 19.190.030(1)(b). Normally, a consumer pleading a claim under the CPA must plead five elements: (1) an unfair or deceptive act or practice (2) in trade or commerce (3) that affects the public interest, (4) injury to plaintiff's business and property, and (5) causation. *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 (2017). Because a CEMA violation constitutes a *per se* CPA violation, all five of these elements are satisfied as a matter of law. *Id.* at 724; *see also Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d at 1003.

81. Accordingly, CEMA "does not condition the award of damages on proving either injury or causation. In fact, damages for CEMA violations are *automatic*." *Wright*, 189 Wn.2d at 729 (emphasis in original). A person is entitled to damages "anytime a prohibited message is transmitted." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d at 1009; *see also In re Classmates.com Consol. Litig.*, No. C09-

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

45RAJ, 2011 WL 744664, at *7 (W.D. Wash. Feb. 23, 2011) ("Washington's

Commercial Electronic Mail Act ('CEMA'), RCW Ch. 19.190, provides statutory

damages of $500 for every email that violates it.").

82.    CEMA prohibits a person from initiating the transmission to an

electronic mail address that the sender knows, or has reason to know, is held by a

Washington State resident of a commercial electronic mail message that contains

false or misleading information in the subject line. RCW 19.190.020(1)(b).

83.    "CEMA was enacted to protect concrete interests in being free from

deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails

with false or misleading subject lines . . . creates a substantive right to be free from

deceptive commercial e-mails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999,

1011 (W.D. Wash. 2019 Nov. 27, 2019) (holding that the plaintiff sufficiently

pleaded concrete injury-in-fact for alleged CEMA violations based on her receipt of

marketing emails from the defendant containing allegedly false "xx% Off" statements

in the subject line).

84.    Under CEMA, it is irrelevant whether the commercial e-mails were

solicited. *Id*.

85.    An injury occurs anytime a commercial e-mail is transmitted that

contains false or misleading information in the subject line. *Id*.

86.    A plaintiff who successfully pleads and proves a CEMA violation as a

*per se* violation of the CPA may recover the remedies available under the CPA (e.g.,

actual damages, increased damages of up to treble actual damages (subject to a

statutory maximum), injunctive relief, attorneys' fees and costs (RCW 19.86.090))

**and/or the remedies available under CEMA (e.g., actual damages or statutory**

**damages of $500 per email sent in violation of CEMA** and injunctive relief

(RCW 19.190.040, RCW 19.190.090)).

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 27
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

87.     Carter's has initiated the transmission of numerous commercial electronic mail messages with false or misleading subject lines to Plaintiff Aguilar and members of the Class (the "Emails").

88.     Carter's transmitted at least eighty-eight (88) of these unlawful emails after August 14, 2019—the date after which Plaintiff's claims are not subject to arbitration.

89.     The Emails were electronic mail messages, in that they were electronic messages sent to an electronic mail address. The Emails from Carter's also referred to an internet domain, whether or not displayed, to which an electronic mail message can or could be sent or delivered.

90.     Carter's sent the Emails for the purpose of promoting goods or services for sale or lease. Carter's was the original sender of the Emails.

91.     Plaintiff Aguilar received the Emails at her electronic mail address, which is the destination, commonly expressed as a string of characters, at which she receives and to which electronic mail may be sent or delivered.

92.     Carter's initiated the transmission, conspired with another to initiate the transmission, and/or assisted the transmission of the Emails to one or more electronic mail addresses that Carter's knew, or had reason to know, were held by a Washington State resident, i.e., to the email addresses of Ms. Aguilar and members of the Class.

93.     At all relevant times, Carter's knew that the intended recipients (Ms. Aguilar and members of the Class) were residents of the State of Washington because, without limitation: (1) Carter's possessed actual knowledge of Ms. Aguilar's and each Class member's state of residence; (2) Carter's possessed constructive knowledge of Ms. Aguilar's and each Class member's state of residence; (3) information was available to Carter's upon request from the registrant of the internet domain name contained in each recipient's electronic mail address; and/or (4)

HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1  Carter's otherwise knew or should have known or had reason to know that Ms.

2  Aguilar and the members of the Class were residents of the State of Washington. *See*

3  *State v. Heckel*, 122 Wash. App. 60, 69 (2004) (holding as a matter of law that a

4  defendant had a reason to know that he sent emails to Washington residents by

5  sending over 100,000 emails a week to people around the country).

6       94.    In violation of the Washington Consumer Protection Act (as based *per se*

7  upon a violation of the Washington Commercial Electronic Mail Act) and for the

8  reasons alleged hereinabove, the subject line of each Email contained false or

9  misleading information. Specifically, the Emails have subject lines stating that

10  Carter's is offering discounts at a specified percentage off—for example, "xx% Off

11  Everything," "xx% Off Entire Site and Store," "Save xx% Off," or "xx% Off

12  [specified products]."

13       95.    Carter's misconduct as alleged herein was not performed in good faith.

14  Carter's misconduct as alleged herein was not reasonable in relation to the

15  development and preservation of business.

16       96.    The balance of the equities favors the entry of permanent injunctive

17  relief against Carter's. Plaintiff, the members of the Class, and the general public will

18  be irreparably harmed absent the entry of permanent injunctive relief against Carter's.

19       97.    Plaintiff, the members of the Class, and the general public lack an

20  adequate remedy at law. Absent injunctive relief, Carter's will continue to transmit

21  emails with false or misleading subject lines to Plaintiff and the Class members.

22  Money damages can only redress past harms; no amount of money damages can

23  redress this threat of future harm. Only injunctive relief can redress the threat of the

24  future harm that is Carter's transmitting more emails with violative subject lines to

25  Plaintiff and Class members.

26

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1    98.    A permanent injunction against Carter's is in the public interest. Carter's

2    unlawful behavior is ongoing as of the date of the filing of this pleading; absent the

3    entry of a permanent injunction, Carter's unlawful behavior will not cease and, in the

4    unlikely event that it voluntarily ceases, is likely to reoccur.

5    **PRAYER FOR RELIEF**

6    Plaintiff MARIBELL AGUILAR, on behalf of herself individually, as a private

7    attorney general, and/or on behalf of the Class of all others similarly situated hereby

8    respectfully requests that this Court order relief and enter judgment against

9    Defendants Carter's, Inc., and The William Carter Company as follows:

10   **As To The First Claim (Violation of the Washington Commercial**

11   **Electronic Mail Act):**

12   1.    For an order certifying the proposed Class and appointing Plaintiff and

13   her counsel to represent the Class;

14   2.    For an order that Defendants be permanently enjoined from the unlawful

15   conduct alleged herein pursuant to, without limitation, RCW 19.190.090(1);

16   **As To The Second Claim (Violation of the Washington Consumer**

17   **Protection Act):**

18   3.    For an order certifying the proposed Class and appointing Plaintiff and

19   her counsel to represent the Class;

20   4.    For actual damages pursuant to, without limitation, RCW 19.86.090;

21   5.    For an increase in the award of actual damages of up to treble the actual

22   damages (up to the statutory maximum of $25,000 to be awarded to Plaintiff for each

23   violative email that Carter's transmitted to her after August 14, 2019, and to each

24   member of the Class for each violative email that Carter's transmitted to them within

25   the applicable limitations period) pursuant to, without limitation, RCW 19.86.090;

26

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 30
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

1      6.     For statutory damages of $500 to be awarded to Plaintiff for <u>each</u>

commercial email that Carter's transmitted to her after August 14, 2019, that

contained false or misleading information in the subject line pursuant to, without

limitation, RCW 19.190.040;

7.     For statutory damages of $500 to be awarded to each member of the

Class for <u>each</u> commercial email that Carter's transmitted to each of them that

contained false or misleading information in the subject line (i.e., $500 to be awarded

to <u>each</u> Class member for <u>each</u> violative email subject line) pursuant to, without

limitation, RCW 19.190.040;

8.     For nominal damages;

9.     For an order that Defendants be permanently enjoined from the unlawful

conduct alleged herein pursuant to, without limitation, RCW 19.86.090;

**<u>As To Each And Every Claim</u>:**

10.    For an order certifying the proposed Class and appointing Plaintiff and

her counsel to represent the Class;

11.    For an order that Defendants be permanently enjoined from the unlawful

conduct alleged herein;

12.    For an order that the Court retain jurisdiction to police Defendants'

compliance with the permanent injunctive relief;

13.    For pre-judgment and/or post-judgment interest to the extent allowed by

law;

14.    For attorneys' fees to the extent allowed by law;

15.    For costs to the extent allowed by law; and/or

16.    For any other relief the Court deems just and proper, including, without

limitation, temporary, preliminary and/or permanent injunctive relief.

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 31
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

# **JURY DEMAND**

Plaintiff Maribell Aguilar demands trial by jury on all issues so triable.


DATED this 8th day of December, 2020.

Presented By:

HATTIS & LUKACS

By: _____
     Daniel M. Hattis

By: _____
     Che Corrington

Daniel M. Hattis, WSBA No. 50428
dan@hattislaw.com
Che Corrington, WSBA No. 54241
che@hattislaw.com
Paul Karl Lukacs (Admitted *pro hac vice*)
pkl@hattislaw.com
HATTIS & LUKACS
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
Tel: 425.233.8650
Fax: 425.412.7171
www.hattislaw.com

Attorneys for Plaintiff Maribell Aguilar
and the Proposed Class

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 32
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA 98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington and the United States of America that on the 8th day of December, 2020, the document attached hereto was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in the matter.


Dated:  December 8, 2020


　　　　　　　　　　　　　　　/s/ Daniel M. Hattis　　　　　　
　　　　　　　　　　　　　　　Daniel M. Hattis, WSBA No. 50428

FIRST AMENDED AND SUPPLEMENTAL CLASS ACTION
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 33
19-CV-03178-SMJ

**HATTIS & LUKACS**
400 108th Avenue NE, Suite 500
Bellevue, WA  98004
425.233.8650 | FAX: 425.412.7171
www.hattislaw.com